IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| Fillpoint, LLC, | Case No. 12-12129 |
| Debtor. | Hon. Robert E. Littlefield, Jr. |

### LIMITED OBJECTION OF BUSINESS PROPERTY LENDING GROUP TO (I) DISCLOSURE STATEMENT FOR PLAN OF REORGANIZATION OF FILLPOINT, LLC, AND (II) PLAN OF REORGANIZATION OF FILLPOINT, LLC

Business Property Lending Group, an affiliate of Everbank ("**Everbank**"), by and through its undersigned counsel, Phillips Lytle LLP, hereby files this limited objection (the "**Objection**") to the (I) Disclosure Statement for Plan of Reorganization of Fillpoint, LLC ("**Disclosure Statement**"), and (II) Plan of Reorganization of Fillpoint, LLC ("**Plan**"), filed by the above-captioned debtor (the "**Debtor**") on July 26, 2013 [Dkt. Nos. 180 and 179]. In support of the Objection, Everbank respectfully submits the following:

### BACKGROUND

1. On August 14, 2012 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

2. Everbank, as successor in interest to General Electric Capital Corporation, is the holder of a claim against the Debtor in the amount of $1,473,089.62 as of the Petition Date secured by a mortgage (the "**Mortgage**") on the Debtor's real property at 200 Fillpoint Drive, Town of Malta, Saratoga County (the "**Property**"). A true and accurate copy of the Mortgage and the Assignment of Interest in Mortgage from General Electric Capital Corporation to Everbank is attached as **Exhibit A**.

3. On July 26, 2013, the Debtor filed the Plan and Disclosure Statement. On the same date, the Court entered its Ex Parte Order Granting the Debtor In Possession Application for an Order to Combine Hearing on the Approval of the Debtor's Disclosure Statement with the Confirmation of Debtor's Chapter 11 Plan [Dkt. No. 177]. A hearing to determine the adequacy of the Disclosure Statement and to confirm the Plan is scheduled for August 28, 2013.[1]

4. The Plan provides for the Debtor to transfer the Property to the reorganized debtor (the "**Reorganized Debtor**"), a newly created entity formed pursuant to the Plan, subject to any existing mortgages. The Reorganized Debtor will be wholly owned by Glenn Rockwood ("**Rockwood**"), a principal of the Debtor. Plan Art. I; *see also* Disclosure Statement Art. IV.C.

5. The Plan does not provide any detail regarding the Reorganized Debtor other than as a brief statement in Article I of the Plan, which reads: "The reorganized Fillpoint, LLC shall continue to operate as a single-asset real estate company going forward with all the debts discharged except for the existing mortgages on Debtor's real estate held by GE Capital and the United States Small Business Administration." The Disclosure Statement does not provide any further detail regarding the Reorganized Debtor.

6. During the pendency of this bankruptcy case, the Debtor continued to make monthly debt service payments to Everbank under the terms of the Mortgage and related loan documents. On information and belief, these debt service payments were funded from rental income from the Property. On further information and belief, the tenant which was providing the Debtor with such rental income intends to soon vacate the premises, and the Debtor does not

---

[1] The Debtor has been aware of the issues set forth herein for a period of time prior to the filing of this Objection, and the Debtor agreed to an extension until August 23, 2013 of Everbank's time to object to the Plan and Disclosure Statement.

have a replacement tenant in place. Neither the status of the current tenant nor any future tenant prospects are discussed in the Disclosure Statement.

## ARGUMENT

**A.    The Disclosure Statement Does Not Provide Adequate Information Regarding The Reorganized Debtor's Business And The Future Satisfaction of Obligations Due Under the Mortgage**

7.    Section 1125(b) of the Bankruptcy Code requires that a disclosure statement provide "adequate information." 11 U.S.C. § 1125(b).

8.    Adequate information, for purposes of Section 1125, means "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records" that would enable "a hypothetical investor typical of the holders of the claims and interests in the case … to make an informed judgment about the plan." 11 U.S.C. § 1125(a).

9.    Courts have noted that a business plan constitutes "significant information" with respect to the adequacy of a disclosure statement in terms of enabling a reasonable hypothetical investor to make an informed decision on whether to vote to accept a plan. *In re Situation Mgmt. Sys., Inc.*, 252 B.R. 859, 865-66 (Bankr. D. Mass. 2000). There is no business plan set forth in the Disclosure Statement, leaving the parties subject to the Plan without any ability to evaluate the potential viability of the Reorganized Debtor.

10.   Typically a business plan includes, among other things: (i) a description of the business and the market within which it will operate; (ii) an industry analysis; (iii) a summary of the financial affairs of the company, including a statement of available capital, likely financing needs and sources, and cash flow projections; and (iv) anticipated returns to investors.

11. Although the disclosure statement of a single asset real estate entity would not necessarily require a full-scale business plan of the type which would be expected of an operating business, the Disclosure Statement, at a minimum, should provide some sort of explanation as to how the Reorganized Debtor intends to fund its mortgage obligations going forward. In this case, the Disclosure Statement provides no such information, and, as such, is insufficient as a matter of law.

**B.    The Plan Fails To Satisfy The Requirement To Confirm A Plan Under Section 1129(a)(11) Of The Bankruptcy Code Because The Plan Is Not Feasible**

12. The Plan must not be confirmed because it fails to meet the requirements of Section 1129(a)(11) of the Bankruptcy Code.

13. Section 1129(a)(11) requires, as a condition of confirmation, that the plan "is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

14. The Court must therefore carefully scrutinize the Plan to determine whether it offers a reasonable prospect of success. *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988); *Pizza of Haw., Inc. v. Shakey's, Inc.*, 761 F.2d 1374, 1382 (9th Cir. 1985).

15. The proponent of a proposed plan bears the burden of proving essential elements of confirmation by a preponderance of the evidence. *In re Briscoe Enters., Ltd. II*, 994 F.2d 1160, 1165 (5th Cir. 1993).

16. The inquiry is focused on the viability of the Reorganized Debtor and its ability to meet its future obligations, both as provided for in the Plan and as may be incurred in operations based upon a showing of "concrete evidence of sufficient cash flow to fund and maintain both its

operations and obligations under the plan." *S&P, Inc. v. Pfeifer*, 189 B.R. 173, 183 (N.D. Ind. 1995).

17. In this case, no scrutiny or analysis is required to determine that the Plan fails to satisfy Section 1129(a)(11), because the Debtor does not make any showing of feasibility in the Plan. Specifically, the Plan omits any evidence (or even discussion) supporting that the Reorganized Debtor will maintain a cash flow sufficient to satisfy its ongoing obligations, including, specifically, the mortgages on the Property.

18. Everbank's concerns are not merely technical or hypothetical, because as discussed above, it does not appear that the Property will have a tenant on the proposed effective date of the Plan. If the Reorganized Debtor wishes to "continue to operate as a single-asset real estate company going forward" as the Plan posits, its only significant income is likely to be rental income, and, without any rental income, is not clear how the Reorganized Debtor would be able to make even its first monthly mortgage payments after the effective date of the Plan.

19. As a result of the foregoing, the plan is unconfirmable because it violates Section 1129(a)(11) of the Bankruptcy Code.

C. **The Plan Is Unconfirmable Because It Improperly Treats Everbank as Unimpaired**

20. In addition, the Plan cannot be confirmed because it violates Section 1124 of the Bankruptcy Code by proposing an impermissible modification of the Mortgage without the consent of Everbank, while classifying Everbank as "unimpaired".

21. Under Section 1124(1), a class of claims is impaired under a plan unless such plan "leaves unaltered the legal, equitable and contractual rights to which such claims or interest entitles the holder of such claim or interest." 11 U.S.C. § 1124(1). Section 1124(2)(E) contains almost identical language. In this case, the Plan's own terms contemplate a transaction that

would result in an acceleration of the Debtor's obligations relating to the Mortgage immediately upon the effectiveness of the Plan.

22.     The Mortgage provides, in relevant part, that the lender "may, at its option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without the Lender's prior written consent, of all of any part of the [Property], or any interest in the [Property]…If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of Grantor." Mortgage at 4.

23.     A claim cannot be reinstated and treated as unimpaired under a plan of reorganization where, as here, such reinstatement would result in a default under the terms of the pre-petition loan documents. *See In re Young Broadcasting, Inc.*, 430 B.R. 99, 115-16 (Bankr. S.D.N.Y. 2010) (holding that plan could not be confirmed where it proposed to reinstate debt in a manner that resulted in defaults under change of control provisions in a pre-petition credit agreement).

24.     The Plan contemplates for the transfer, as defined in the Mortgage, of the Property as a result of Rockwood's purchase of the Reorganized Debtor.  Since such transfer is to occur upon the Plan's effectiveness, it can obviously not be cured, and thus constitutes an impairment under Section 1124 of the Bankruptcy Code.  Since the Plan purports to treat Everbank as unimpaired, the Plan is unconfirmable.

25.     Everbank's concerns with its treatment under the Plan go hand in hand with the feasibility arguments set forth above. The pre-petition loan was originally made to a business entity which would fund debt service payments from operating revenues, and the post-petition

Debtor funded debt service payments from rental income. The proposed Reorganized Debtor does not purport to have any stream of income to support its debt service obligations. Outside of bankruptcy, it is hard to imagine any lender would agree to what is essentially the assignment of a loan to an entity that has not shown the financial wherewithal to support the obligations under such loan.

## CONCLUSION

26. For the foregoing reasons, Everbank respectfully requests that the Court: (i) deny approval of the Disclosure Statement for failure to comply with the requirement of Section 1125(b) of the Bankruptcy Code based on lack of adequate information; (ii) enter an order determining that the Plan cannot be confirmed because it does not satisfy the requirements of Sections 1124 and 1129(a) of the Bankruptcy Code; and (iii) grant such other and further relief as may be just and proper.

Dated:   Rochester, New York
         August 23, 2013

                      PHILLIPS LYTLE LLP

                      By: /s/ Todd A. Ritschdorff
                            Allan L. Hill, Esq.
                            Todd A. Ritschdorff, Esq.
                            Nickolas Karavolas, Esq.

                            28 East Main Street, Suite 1400
                            Rochester, New York 14614-1935
                            Telephone: (585) 238-2000

                            and

                            Omni Plaza
                            30 South Pearl Street
                            Albany, New York 12207
                            Telephone: (518) 472-1224

                            Attorneys for Business Property Lending Group,
                            an affiliate of Everbank

Doc #05-437820.3